1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HENDRIK BLOCK, | Case No.  1:24-cv-00812-SAB |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT WITH REDUCTION IN ATTORNEYS' FEES |
| v. | |
| ARSH & JOT LLC, | |
| Defendant. | ORDER DIRECTING THE CLERK OF THE COURT TO RANDOMLY ASSIGN THIS MATTER TO A DISTRICT JUDGE |
| | ORDER REQUIRING SERVICE ON DEFENDANT WITHIN THREE DAYS |
| | (ECF No. 8) |
| | **OBJECTIONS DUE WITHIN FOURTEEN DAYS** |

## I.

## INTRODUCTION

Pending before the Court is Plaintiff Hendrik Block's ("Plaintiff") motion for default judgment.  Plaintiff seeks default judgment against Defendant Arsh & Jot LLC ("Defendant"), which owns and operates 1 Stop Liquor located in Madera, California.  No opposition to the motion was filed.  On November 20, 2024, the Court held a hearing on the motion, at which no appearance was made on behalf of Defendant.  Having considered the moving papers, the declarations and exhibits attached thereto, Defendant's nonappearance at the hearing, as well as

the Court's file, the Court issues the following findings and recommendations recommending granting Plaintiff's motion for default judgment, subject to a reduction in attorneys' fees.

Following amendment of the Local Rules effective March 1, 2022, a certain percentage of civil cases shall be directly assigned to a Magistrate Judge only, with consent or declination of consent forms due within 90 days from the date of filing of the action.  L.R. App. A(m)(1).  This action has been directly assigned to a Magistrate Judge only.  Not all parties have appeared or filed consent or declination of consent forms in this action.  Pursuant to 28 U.S.C. § 636(b)(1)(B), Local Rule 302(c)(7), and Local Rule Appendix A, subsection (m), the Court shall direct the Clerk of the Court to assign a District Judge to this action and the Court shall issue findings and recommendations as to the pending motion to dismiss.

**II.**

**BACKGROUND**

**A.      Procedural History**

On July 12, 2024, Plaintiff filed this action against Defendant Arsh & Jot LLC.  (ECF No.1.)  Defendant did not respond to the complaint.  On September 10, 2024, Plaintiff requested an entry of default be entered against Defendant (ECF No. 5); the Clerk of the Court entered an entry of default the same day (ECF No. 6.)

On October 16, 2024, Plaintiff filed a motion for default judgment against Defendant. (ECF No. 8.)  Defendant did not file an opposition to the motion nor otherwise appear in this action.  The deadline to file an opposition has expired.  See L.R. 230(c).

On November 6, 2024, the Court held a hearing with the courtroom open to the public. (ECF No. 11.)  Counsel Tanya E. Moore appeared on behalf of Plaintiff.  No one appeared on behalf of Defendant.

**B.      Allegations in the Operative Complaint**

Plaintiff's verified complaint asserts causes of action for violations of the Americans with Disabilities Act ("ADA"), California's Unruh Civil Rights Act (the "Unruh Act"), and denial of full and equal access to public facilities pursuant to California Health and Safety Code §§ 19953 *et seq.* against Defendant, the purported owner/operator/leaser of the facility 1 Stop Liquor, 408

East Cleveland Avenue, Madera, California 93638 (the "Facility").  (ECF No. 1, ¶¶ 1, 16-46.) Plaintiff alleges the Facility, a liquor and convenience store, is open to the public, intended for non-residential use, affects commerce, and is a "public accommodation" under 42 U.S.C. § 12181(7)(F).  (Id. at ¶ 9; ECF No. 8-1 at p. 3.)[1]

Plaintiff alleges he is substantially limited in his ability to walk, and must use a cane, walker, wheelchair, or electric scooter for mobility.  (ECF No. 1, ¶ 8.)  Plaintiff contends he regularly travels to the area where the Facility is located.  (Id. at ¶ 10.)  On or about November 30, 2023, and December 6, 2023, Plaintiff alleges he visited the Facility to purchase snacks and water.  (Id.)  During both visits, Plaintiff contends he encountered barriers that interfered with and denied his ability to use and enjoy the goods, services, privileges, and accommodations offered at the Facility.  (Id.)  Specifically, Plaintiff identifies the following barriers:

### a) Lack of proper identification at accessible parking stall

The accessible parking lacks signage and proper pavement markings, and the existing pavement markings are extremely faded. As a result, it was difficult for Plaintiff to locate the accessible parking, and the lack of identification also makes it more likely that an able-bodied person will park in the space, making it unavailable to Plaintiff, . . . in violation of 1991 ADAAG § 4.6.4

### b) Loose mat at Facility entrance

There was a loose floor mat at the Facility entrance, which Plaintiff tripped over during his November 30, 2023 visit and almost fell, . . . in violation of 1991 § ADAAG 4.5.3.

### c) Inaccessible routes through the interior of Facility

The aisles within the Facility lack sufficient clear width and contain missing/damaged floor tiles that create excessive slopes and height changes. As a result, when Plaintiff used his cane during his November 30, 2023 visit, he had difficulty walking through the store without tripping over the uneven flooring. When Plaintiff used his wheelchair during his December 6, 2023 visit, he could not wheel down several aisles because they lacked sufficient clear width. His wheels also became stuck in the gaps in the flooring, making it difficult to maneuver, . . . in violation of 1991 ADAAG §§ 4.3.3, 4.3.7, 4.3.8.

(Id. at ¶ 10; ECF No. 24-1 at 5.)  Plaintiff asserts the described barriers constitute noncompliance

---

[1] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system, or when not available, the actual PDF page number.

with the 1991 ADA Accessibility Guidelines ("1991 Standards") and/or the 2010 ADA Standards for Accessible Design, in violation of 42 U.S.C. § 12182(a), as well as California Civil Code § 51(f).  (ECF No. 1, ¶¶ 16-46; ECF No. 8-1, pp. 4-6.)  Plaintiff further alleges Defendant knew or should have known of the barriers, and that Defendant has the financial means to remove them but refuses to do so.  (ECF No. 1, ¶ 13.)  Plaintiff claims the obviousness of the barriers is sufficient to establish discriminatory intent.  (Id. at ¶¶ 14-15.)

As a result of these barriers, Plaintiff contends he is deterred from visiting the Facility because its goods, services, facilities, privileges, advantages, and accommodations were unavailable to him due to his physical disabilities and Plaintiff will return to the Facility once the barriers are removed.  (Id. at ¶ 10, 12.)  Plaintiff seeks injunctive and declaratory relief, statutory damages, attorneys' fees, and costs.  (Id. at pp. 8-9; ECF No. 8-1, pp. 6-9.)

## III.

## LEGAL STANDARD

"Our starting point is the general rule that default judgments are ordinarily disfavored" because "[c]ases should be decided upon their merits whenever reasonably possible."  NewGen, LLC v. Safe Cig, LLC, 840 F.3d 606, 616 (9th Cir. 2016) (quoting Eitel v. McCool, 782 F.2d 1470, 1472 (9th Cir. 1986)).  Pursuant to Federal Rule of Civil Procedure ("Rule") 55, obtaining a default judgment is a two-step process.  Entry of default is appropriate as to any party against whom a judgment for affirmative relief is sought that has failed to plead or otherwise defend as provided by the Federal Rules of Civil Procedure and where that fact is made to appear by affidavit or otherwise.  Fed. R. Civ. P. 55(a).  After entry of default, a plaintiff can seek entry of default judgment.  Fed. R. Civ. P. 55(b).  Rule 55(b)(2) provides the framework for the Court to enter a default judgment:

> Entering a Default Judgment.
>
> (2) By the Court.  In all other cases, the party must apply to the court for a default judgment.  A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared.  If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application

4

at least 7 days before the hearing.  The court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to:

(A) conduct an accounting;

(B) determine the amount of damages;

(C) establish the truth of any allegation by evidence; or

(D) investigate any other matter.

Id.

The decision to grant a motion for default judgment is within the discretion of the court. PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002); see also TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917 (9th Cir. 1987).  The Ninth Circuit has set forth the following seven factors (the "Eitel factors") that the Court may consider in exercising its discretion: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.  Eitel, 782 F.2d at 1471-72.

Generally, once default has been entered, "the factual allegations of the complaint, except those relating to damages, will be taken as true."  Garamendi v. Henin, 683 F.3d 1069, 1080 (9th Cir. 2012) (quoting Geddes v. United Fin. Grp., 559 F.2d 557, 560 (9th Cir. 1977)); see also Fed. R. Civ. P. 8(b)(6).  The amount of damages must be proven at an evidentiary hearing or through other means.  Microsoft Corp. v. Nop, 549 F. Supp. 2d 1233, 1236 (E.D. Cal. 2008). Additionally, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default."  Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (internal citation omitted).  The relief sought must not be different in kind or exceed the amount that is demanded in the pleadings. Fed. R. Civ. P. 54(c).

**IV.**

**DISCUSSION**

5

The Court begins by discussing jurisdiction and then turns to the Eitel factors to determine whether default judgment should be entered.

**A.    Jurisdiction**

1.  Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction and their power to adjudicate is limited to that granted by Congress.  United States v. Sumner, 226 F.3d 1005, 1009 (9th Cir. 2000).  Pursuant to 28 U.S.C. § 1331, federal courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States.'  "A case 'arises under' federal law either where federal law creates the cause of action or where the vindication of a right under state law necessarily turns on some construction of federal law."  Republican Party of Guam v. Gutierrez, 277 F.3d 1086, 1088 (9th Cir. 2002) (internal punctuation omitted) (quoting Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 8-9 (1983) (citations omitted).  "[T]he presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."  Id. at 1089 (citations omitted).

Plaintiff brings this action alleging violations of the ADA of 1990, 42 U.S.C. §§ 12101, *et seq*.  Therefore, the Court has original jurisdiction under 28 U.S.C. § 1331.  In addition, the Court may exert supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over Plaintiff's related state law claims under the Unruh Act, California Civil Code §§ 51, *et seq*.

2.  Service of Process on Defendant

The Court considers the adequacy of service of process before evaluating the merits of a motion for default judgment.  See Mason v. Genisco Tech. Corp., 960 F.2d 849, 851 (9th Cir. 1992).  "A federal court does not have jurisdiction over a defendant unless the defendant has been served properly under Fed. R. Civ. P. 4."  Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc. (Direct Mail), 840 F.2d 685, 688 (9th Cir. 1988) (citations omitted).  "Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint."  Id. (quoting United Food & Commercial Workers Union v. Alpha Beta

1    <u>Co.</u>, 736 F.2d 1371, 1382 (9th Cir. 1984)).  However, "without substantial compliance with Rule

2    4, 'neither actual notice nor simply naming the defendant in the complaint will provide personal

3    jurisdiction.'"  <u>Id.</u> (quoting <u>Benny v. Pipes</u>, 799 F.2d 489, 492 (9th Cir. 1986)).  "[A] signed

4    return of service constitutes prima facie evidence of valid service which can be overcome only

5    by strong and convincing evidence."  <u>SEC v. Internet Solutions for Bus., Inc.</u>, 509 F.3d 1161,

6    1163 (9th Cir. 2007).

7       Here, Defendant is a business entity, thus Rule 4 subdivision (h) applies.  Under Rule

8    4(h), a corporation, partnership, or other unincorporated association that is subject to suit under a

9    common name must be served "(A) in the manner prescribed by Rule 4(e)(1) for serving an

10    individual," or "(B) by delivering a copy of the summons and of the complaint to an officer, a

11    managing or general agent, or any other agent authorized by appointment or by law to receive

12    service of process and—if the agent is one authorized by statute and the statute so requires—by

13    also mailing a copy of each to the defendant[.]"  Fed. R. Civ. P. 4(h)(1)(A)-(B).  Under Rule

14    4(e)(1), an individual may be served pursuant to state law.  Fed. R. Civ. P. 4(e)(1).

15       California law sets forth requirements both as to who may be served, Cal. Code Civ.

16    Proc. §§ 415.10-416.90, and the manner in which service on that person may be effected.  Cal.

17    Code Civ. Proc. §§ 416.10-415.95.  As relevant here, service may be completed upon various

18    "persons," including corporations.  Cal. Code Civ. Proc. § 416.10.  A corporation may be served

19    by delivering a copy of the summons and complaint to: (1) the person designated as agent for

20    service of process; (2) the president, chief executive officer, or other head of the corporation, a

21    vice president, a secretary or assistant secretary, a treasurer or assistant treasurer, a controller or

22    chief financial officer, a general manager a person authorized by the corporation to receive

23    service of process; or (3) as authorized by provisions of California's Corporations Code §§ 1701,

24    1702, 2110, 2111, 3301-3303, or 6500-6504 (depending upon the applicable time).  Cal. Code

25    Civ. Proc. §§ 416.10(a)-(b), (d).

26       As to the manner in which service may be completed, California law permits either

27    personal service or substituted service.  Cal. Code Civ. Proc. §§ 415.10, 415.20.  Under Cal.

28    Code Civ. Proc. § 415.20, substitute service on regular corporations, dissolved/charter-forfeited

7

1   corporations, or joint stock companies/associations may be completed as follows:

2
3               a summons may be served by leaving a copy of the summons and
                complaint during usual office hours in his or her office . . . with the
4               person who is apparently in charge thereof, and by thereafter
                mailing a copy of the summons and complaint by first-class mail,
5               postage prepaid to the person to be served at the place where a copy
                of the summons and complaint were left.  When service is effected
6               by leaving a copy of the summons and complaint at a mailing
                address, it shall be left with a person at least 18 years of age, who
7               shall be informed of the contents thereof.  Service of a summons in
                this manner is deemed complete on the 10th day after the mailing.

8   Cal. Civ. Proc. Code § 415.20(a)

9        Here, the business search page of the California Secretary of State website provides that

10  Defendant is a corporation in good standing, with its principal place of business and mailing

11  address at 408 E. Cleveland Avenue, Madera, California 93636.[2]  Business search for California-

12  Fresno   Investment   Company,   Cal.   Secretary   of   State,   https://bizfileonline.sos.ca.gov/

13  search/business (last visited October 28, 2024).  The Secretary of State website further indicates

14  the agent for service of process is Harvinder Singh, located at the same principal address.  Id.

15       Plaintiff's proof of service proffers that Plaintiff served Harvinder Singh, the "person

16  authorized to accept service of process," on August 7, 2024, at 10:30 a.m., by substituted service

17  on Mohammed "Doe", described as "Person In Charge" at 408 E. Cleveland Avenue, Madera,

18  California 93638.  (ECF No. 4, pp. 2-3.)  The proof of service also includes a declaration of

19  mailing, which indicates a copy of the summons and complaint was subsequently mailed to

20  Harvinder Singh on August 8, 2024, at the same 408 E. Cleveland Avenue address.  (Id. at p. 4.)

21  As to the manner of substituted service, the affidavit provides unproductive boilerplate language

22  that states substituted service was completed "under section CCP 415.20(a) or 415.20(b) or FRCP

23  4(e)(2)(B) or FRCP 4(h)(1)(B)."  (Id.)  In his motion, Plaintiff states Defendant was served by

24  substituted service in the manner prescribed by Rule 4(h)(1)(A) (permitting service on a person

25  pursuant to Rule 4(e)(1), which requires compliance with state law).  (ECF No. 8-1, p. 10.)

---

26  [2] Courts may take judicial notice of "a fact that is not subject to reasonable dispute because it . . . can be accurately
    and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).
27  Courts may take judicial notice of information displayed on government websites where neither party disputes the
    accuracy of the information contained therein, including the California Secretary of State's website.  See Daniels-
28  Hall v. Nat'l. Educ. Ass'n, 629 F.3d 992, 998-99 (9th Cir. 2010); Gerritsen v. Warner Bros. Ent. Inc., 112 F. Supp.
    3d 1011, 1034 (C.D. Cal. 2015).

8

The Court finds service was properly effectuated under California's provisions for substitute service on a corporation pursuant to Cal. Code Civ. Proc. § 415.20(a).  The proof of service indicates that substituted service was executed during usual office hours on Wednesday, August 7, 2024, at the same address as that of the registered agent for service of process, on Mohammed "Doe," a person "at least 18 years of age apparently in charge of the office or usual place of business," who was informed of the general nature of the documents.  (ECF No. 4, p. 2.)  See Tim Pao v. Liphan Lee, No. CV-13-6421-DSF (AJWX), 2013 WL 12203046, at *2 (C.D. Cal. Oct. 21, 2013).  The proof of service also indicates that, in compliance with Cal. Code Civ. Proc. § 415.20(a), the summons, complaint, and other documents were subsequently sent by prepaid first-class mail to Harvinder Singh at the same 408 E. Cleveland Avenue address where a copy of the summons and complaint were left.  (ECF No. 4, p. 4.)  See J & J Sports Prods., Inc. v. Barksdale, No. CIV S-11-2994 JAM, 2012 WL 1353903, at *5 (E.D. Cal. Apr. 13, 2012).

Although the proof of service failed to provide any factual details as to how the process server knew Mohammed "Doe" was "apparently in charge of the business," "a signed return of service constitutes prima facie evidence of valid service which can be overcome only by strong and convincing evidence."  Internet Solutions for Bus., Inc., 509 F.3d at 1163.  The Court therefore finds service was properly effectuated on Defendant.

**B.    Evaluation of the Eitel Factors in Favor of Default Judgment**

The Court finds that consideration of the Eitel factors weighs in favor of granting default judgment in favor of Plaintiff.

1.    Possibility of Prejudice Toward Plaintiff

Generally, where default has been entered against a defendant, a plaintiff has no other means by which to recover against that defendant.  PepsiCo, Inc., 238 F. Supp. 2d at 1177; Moroccanoil, Inc. v. Allstate Beauty Prods., 847 F. Supp. 2d 1197, 1200-01 (C.D. Cal. 2012).  Here, the Court finds Plaintiff would be prejudiced if default judgment were not granted because Plaintiff does not have any other way to recover against Defendant.  See Vogel v. Rite Aid Corp., 992 F. Supp. 2d 998, 1007 (C.D. Cal. 2014).  This factor weighs in favor of default judgment against Defendant.

2. <u>Merits of Plaintiff's Claims and Sufficiency of the Complaint</u>

The second and third <u>Eitel</u> factors, taken together, "require that a plaintiff state a claim on which the [plaintiff] may recover." <u>PepsiCo, Inc.</u>, 238 F. Supp. 2d at 1175 (brackets in original). The complaint asserts claims under the ADA, the Unruh Act, and Health and Safety Code. Plaintiff's motion, however, only requests default judgment with respect to the ADA and the Unruh Act claims.

### a. Americans with Disabilities Act

Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability" in places of public accommodation. 42 U.S.C. § 12182(a). "Discrimination" is defined as a failure to make reasonable modifications in policies, practices, or procedures, when modification is necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations." <u>Id.</u> at § 12182(b)(2)(A)(ii).

"To prevail on a Title III discrimination claim, the plaintiff must show that (1) she is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of her disability." <u>Molski v. M.J. Cable, Inc.</u>, 481 F.3d 724, 730 (9th Cir. 2007). Facilities include "all or any portion of buildings, structures, sites, complexes, equipment, rolling stock or other conveyances, roads, walks, passageways, parking lots, or other real or personal property, including the site where the building, property, structure, or equipment is located." 28 C.F.R. § 36.104. Further, "[t]o succeed on an ADA claim of discrimination on account of one's disability due to an architectural barrier, the plaintiff must also prove that: (1) the existing facility at the defendant's place of business presents an architectural barrier prohibited under the ADA, and (2) the removal of the barrier is readily achievable." <u>Hubbard v. 7-Eleven, Inc.</u>, 433 F. Supp. 2d 1134, 1138 (S.D. Cal. 2006) (quoting <u>Parr v. L & L Drive-Inn Rest.</u>, 96 F. Supp. 2d 1065, 1085 (D. Haw. 2000)); <u>see also Wyatt v. Ralphs Grocery Co.</u>, 65 F. App'x 589, 590 (9th Cir. 2003).

10

i.   <u>Whether Plaintiff is Disabled Within the Meaning of the ADA</u>

Plaintiff must first allege he is disabled under the ADA.  <u>Molski</u>, 481 F.3d at 730.  The ADA defines disability as "a physical or mental impairment that substantially limits one or more major life activities."  42 U.S.C. § 12102(1)(A).  Major life activities include walking, standing, and hearing.  42 U.S.C. § 12102(2)(A).  An individual who is substantially limited in his ability to walk is disabled under the ADA.  42 U.S.C. § 12102.

Plaintiff alleges that he is substantially limited in his ability to walk and must use a cane, walker, wheelchair, or electric scooter for mobility.  (ECF No. 1, ¶ 8.)  Therefore, Plaintiff has adequately pleaded this element of his ADA discrimination claim.

ii.   <u>Whether Defendant Owns, Leases, or Operates a Place of Public Accommodation</u>

Plaintiff must allege Defendant "owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. § 12182(a); <u>Molski</u>, 481 F.3d at 730.  The ADA expressly provides that sales establishments are considered a public accommodation.  42 U.S.C. § 12181(7)(E).  Plaintiff proffers the Facility—which Plaintiff alleges he visited to purchase snacks and water—is a sales establishment open to the public, intended for non-residential use, its operation affects commerce, and is a place of public accommodation under the ADA.  (ECF No. 1, ¶¶ 9-10; ECF No. 8-1, p. 5.)

Plaintiff's complaint generally alleges that "Defendants [sic] own, operate, and/or lease the Facility, and consist of a person (or persons), firm, and/or corporation."  (ECF No. 1, ¶ 7; <u>see also</u> ECF No. 8-1 p. 5.)  Plaintiff's counsel's declaration attached to the instant motion provides additional support for Plaintiff's contention.  (ECF No. 8-2.)  Counsel attaches a printout of a search result for 408 E. Cleveland Avenue, Madera, California 93638, APN 004-071-015 from the "Parcel Quest public records database," which counsel proffers reflects that Defendant owns the real property on which the Facility is located.  (ECF No. 8-2, ¶ 15; ECF No. 8-3, Ex. E, pp. 11-12.)  In addition, counsel provides a grant deed from the Madera County Recorder, indicating that Defendant Arsh and Jot, LLC owns APN 004-071-015.  (<u>Id.</u>; ECF No. 8-3, Ex. E, pp. 13-18.)  Counsel also provides a copy of an online California Department of Alcoholic Beverage Control ("ABC") report, dated July 11, 2024, for a business named "1 Stop Liquor & Gas," primarily

owned by Arsh & Jot LLC, located at 408 E. Cleveland Ave, Madera, California 93638.  (ECF No. 8-2, ¶ 15; ECF No. 8-3, Ex. E, pp 19-20.)

In consideration of counsel's declaration and the supporting property records, the Court finds Plaintiff has sufficiently alleged that the Defendant owns or operates the Facility.

### iii.  Plaintiff Was Denied Public Accommodations Due to an Architectural Barrier

#### (1) Whether Denial of Access Was Due to Disability

Plaintiff must allege and prove that he was denied public accommodations by a defendant because of his disability.  Molski, 481 F.3d at 730.  Here, Plaintiff alleges it was difficult for him to locate the designated accessible parking in the Facility's lot because it was missing signage and had faded pavement markings that were extremely faded.  (ECF No. 1, ¶ 10.)  Further, Plaintiff alleges he tripped over a loose mat during his November 30, 2023 visit and almost fell.  (Id.)  Plaintiff also alleges that the aisles in the Facility are not of sufficient width and that there are missing/damaged floor times that create excessive slopes and height changes, which made it difficult for Plaintiff to walk through the store without tripping.  (Id.)  On Plaintiff's December 6, 2023 visit, he used his wheelchair and could not go down several of the aisles because of the lack of sufficient width.  (Id.)  Thus, the Court finds that Plaintiff has adequately established he was denied access to the Facility due to his disability.

#### (2) Architectural Barrier

Congress entrusted the Attorney General with promulgating the implementing regulations for Title III.  Fortyune v. Am. Multi-Cinema, Inc., 364 F.3d 1075, 1080 (9th Cir. 2004) (citing 42 U.S.C. § 12186(b)).  Congress provided that these implementing regulations must be consistent with the minimum guidelines issued by the Architectural and Transportation Barriers Compliance Board, which issued its final ADA Accessibility Guidelines for Buildings and Facilities ("ADAAG") in 1991.  Id. (citing 42 U.S.C. § 12186(c); 36 C.F.R. Pt. 1191, App. A).  The Attorney General adopted the ADAAG as the "Standards for Accessible Design," which lay out the technical structural requirements of places of public accommodation and are applicable during the design, construction, and alteration of such facilities.  Id. (citing 28 C.F.R. Pt. 36, App. A).  "Whether a facility is 'readily accessible' is defined, in part, by the ADA Accessibility

1    Guidelines." Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 945 (9th Cir. 2011).

2            Plaintiff proffers that because no discovery has occurred, he does not know if the Facility

3    was constructed or had any alteration done after March 15, 2012, and therefore will apply the

4    1991 ADAAG standards to determine whether a barrier existed at the time of his visit to the

5    Facility.  (ECF No. 8-1, p. 4; see also ECF No. 1, ¶ 14.)  However, Plaintiff submits—and the

6    Court agrees—that the 2010 Standards now in effect will govern any injunction which issues,

7    since the remedial work will be undertaken after March 15, 2012.  (ECF No. 8-1, p. 4.)

8            As noted herein, Plaintiff alleges he could not easily find the accessible parking stall, and

9    thereafter tripped on a loose mat, almost falling.  (ECF No. 1, ¶ 10.)  Plaintiff also had a hard time

10   walking and later using his wheelchair due to the narrow width of the aisles and missing tiles on

11   the floor.  (Id.)  Plaintiff maintains these barriers violate 1991 ADAAG §§ 4.3.7, 4.3.8, 4.6.4,

12   4.5.3, and 4.6.3.  (ECF No. 8-1, pp. 5-6.)

13           The Court notes that even on default judgment in ADA cases, plaintiffs often present the

14   results of an investigation by an independent consultant, such as a construction expert that takes

15   measurements, or at least a more detailed declaration of the plaintiff in support of the claim that

16   there is an architectural barrier.  Such details do not appear in the instant motion.  Nonetheless,

17   taking the allegations as true for purposes of default judgment as presented by Plaintiff in his

18   verified complaint, and based on the applicable laws and regulations, the Court finds Plaintiff has

19   sufficiently alleged and demonstrated the presence of architectural barriers at the Facility which

20   violate the ADA.

21            (3) Whether Removal of the Barrier Is Readily Achievable

22           Removal of an architectural barrier is "readily achievable" if it is "easily accomplishable

23   and able to be carried out without much difficulty or expense."  42 U.S.C § 12181(9).  Factors to

24   be considered in determining whether such removal is readily achievable include:

25                    (A) the nature and cost of the action needed under this chapter; (B)
                 the overall financial resources of the facility or facilities involved in
26               the action; the number of persons employed at such facility; the
                 effect on expenses and resources, or the impact otherwise of such
27               action upon the operation of the facility; (C) the overall financial
                 resources of the covered entity; the overall size of the business of a
28               covered entity with respect to the number of its employees; the

                                                   13

1
2
3
4

> number, type, and location of its facilities; and (D) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity.

Id.  Federal regulations provide examples of readily achievable steps to remove barriers,

including, but not limited to, installing ramps, making curb cuts in sidewalks and entrances,

widening doors, eliminating a turnstile or providing an alternative accessible path, and creating

designated accessible parking spaces.  28 C.F.R. § 36.304(b).

"All the plaintiff must do at the pleadings stage to proceed under § 12182(b)(2)(A)(iv) is

plausibly allege that the barrier's removal is readily achievable."  Whitaker v. Sheikh, No. 21-cv-

0493-KJM-KJN, 2022 WL 1262023, at *7 (E.D. Cal. Apr. 28, 2022).  If the defendant fails to

plead an applicable affirmative defense, "the plaintiff is effectively entitled to judgment on the

pleadings as to that claim—assuming he pleads the preceding elements of a qualifying disability,

a covered public accommodation, and an architectural barrier encountered."  Id.; cf. Lopez v.

Catalina Channel Express, Inc., 974 F.3d 1030, 1038 (9th Cir. 2020).

Here, Plaintiff alleges that Defendant "can easily remove the architectural barriers at the

Facility without much difficulty or expense, that the cost of removing the architectural barriers

does not exceed the benefits under the particular circumstances, and that Defendant violated the

ADA by failing to remove those barriers, when it was readily achievable to do so."  (ECF No. 1,

¶ 21.)  In the motion, Plaintiff argues that Defendant can easily remove the barriers without much

difficulty or expense because creating designated accessible parking spaces is an identified

"exampl[e] of readily achievable steps to remove barriers;" the loose mat may be easily removed

or secured; and aisles may be repositioned and the floor may be repaired without difficulty or

expense.  (ECF No. 8-1, pp. 5-6.)

For purposes of default judgment, the Court finds Plaintiff has plausibly alleged that

removal of the architectural barriers he encountered is readily achievable.  Federal regulations

provide a non-exclusive list of steps to remove barriers, including "[c]reating designated

accessible parking spaces" and "[r]epositioning shelves" 28 C.F.R. §§ 36.304(b)(3), (18).  Courts

have also observed that such listed items are "examples of readily achievable steps to remove barriers" and found similar allegations to those alleged here sufficient at the default judgment stage. Johnson v. Garlic Farm Truck Ctr. LLC, No. 20-cv-03871-BLF, 2021 WL 2457154, at *5-*6 (N.D. Cal. Jun. 16, 2021). Defendant has not appeared in nor defended this action and thus has offered no affirmative defense that the barriers' removal is not readily achievable.

In sum, Plaintiff has plausibly alleged a prima facie claim for discrimination under Title III against the Defendant owners of the Facility. Plaintiff would thereby be entitled to injunctive relief for the violations of the ADA as asserted against Defendant.

### b.    California's Unruh Act

Plaintiff also brings a state law claim for violations of the Unruh Act. Pursuant to the Unruh Act, all persons are "entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal Civ. Code § 51(b). Additionally, no business establishment of any kind whatsoever shall discriminate against any person in this state on account of disability. Cal. Civ. Code § 51.5. Unlike the ADA, the Unruh Act permits the recovery of monetary damages, in the form of actual and treble damages, at a statutory minimum of at least $4,000.00 per violation. Cal. Civ. Code § 52(a); Molski, 481 F.3d at 731; Vogel, 992 F. Supp. 2d at 1011. After passage of the ADA in 1990, the Unruh Act was amended to provide that a violation of the ADA constitutes a violation of the Unruh Act. Cal. Civ. Code § 54.1(d). Thus, the Unruh Act incorporates an individual's rights under the ADA by reference, such that a violation of the ADA also constitutes a violation of the Unruh Civil Rights Act. Cal. Civ. Code § 51(f).

Here, Plaintiff alleges Defendant denied him full and equal accommodations, advantages, facilities, privileges, and services in a business establishment based on his disability. (ECF No. 1, ¶¶ 34-41.) Because the complaint properly alleges a prima facie claim under the ADA against the Defendant owners of the Facility, the Court finds Plaintiff has also properly alleged facts establishing the necessary elements for an Unruh Act claim.

Accordingly, the Court finds that the second and third Eitel factors weigh in favor of default judgment as asserted against Defendant.

1

   3.   The Sum of Money at Stake in the Action

2          The sum of money at stake in this action weighs in favor of granting default judgment.

3   PepsiCo, Inc., 238 F Supp. 2d at 1176; see also Philip Morris USA, Inc. v. Castworld Prods., Inc.,

4   219 F.R.D. 494, 500 (C.D. Cal. 2003).   Default judgment is disfavored where large amounts of

5   money are involved, or the award would be unreasonable in light of the defendant's actions.   G &

6   G Closed Cir. Events, LLC v. Nguyen, No. 3:11-cv-06340-JW, 2012 WL 2339699, at *2 (N.D.

7   Cal. May 30, 2012); PepsiCo, Inc., 238 F. Supp. 2d at 1176.  Here, in addition to injunctive relief,

8   Plaintiff is seeking statutory damages in the amount of $4,000.00, attorneys' fees and paralegals'

9   fees in the amount of $1,624.50, and costs of $765.75, for a total award of $6,390.25.   (ECF No

10   8-1, pp. 7-11.)  This is not an excessive amount of money, nor does it seem unreasonable in light

11   of the allegations contained in the complaint.  See Vogel, 992 F. Supp. 2d at 1012 (citing Moore

12   v. Cisneros, No. 1:12-cv-00188 LJO SKO, 2012 WL 6523017, *4 (E.D. Cal. Dec. 13, 2012));

13   Johnson v. Huynh, No. CIV S-08-1189 JAM DAD, 2009 WL 2777021, *2 (E.D. Cal. Aug. 27,

14   2009).  Accordingly, this factor does not weigh against default judgment.

15          4.   The Possibility of a Dispute Concerning Material Facts

16          The next Eitel factor considers the possibility of a dispute concerning material facts.   As

17   discussed above, Plaintiff has sufficiently alleged disability discrimination under the ADA and

18   the Unruh Act by demonstrating his encountering of architectural barriers at the Facility.   The

19   Court finds this factor weighs in favor of entering default judgment because there is no possibility

20   of dispute regarding the material facts due to the factual allegations in the complaint being taken

21   as true upon Defendant's default.  See Garamendi, 683 F.3d at 1080; PepsiCo, Inc., 238 F. Supp.

22   2d at 1177.   Accordingly, the Court finds this Eitel factor weighs in favor of granting default

23   judgment in favor of Plaintiff against Defendant.

24          5.   Whether Default Was Due to Excusable Neglect

25          The sixth Eitel factor considers the possibility that a defendant's default resulted from

26   excusable neglect.  PepsiCo, Inc., 238 F. Supp. 2d at 1177.   Courts have found that where a

27   defendant was "properly served with the complaint, the notice of entry of default, as well as the

28   paper in support of the [default judgment] motion," there is no evidence of excusable neglect.

1    <u>Shanghai Automation Instrument Co. v. Kuei</u>, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001).

2           The Court finds this factor weighs in favor of granting default judgment because

3    Defendant has failed to file a responsive pleading or otherwise appear in this action, despite being

4    properly served.  <u>See</u> <u>id.</u>

5           6.   <u>Policy Favoring a Decision on the Merits</u>

6           Generally, default judgments are disfavored, and a case should be decided on the merits

7    whenever possible.  <u>See</u> <u>Pena v. Seguros La Comercial, S.A.</u>, 770 F.2d 811, 814 (9th Cir. 1985).

8    However, the policy favoring decisions on the merits does not weigh against entering default

9    judgment where, as here, Defendant's failure to appear has made a decision on the merits

10   impossible at this juncture.  <u>PepsiCo, Inc.</u>, 238 F. Supp. 2d at 1177; <u>see also</u> <u>Craigslist, Inc. v.</u>

11   <u>Naturemarket, Inc.</u>, 694 F. Supp. 2d 1039, 1061 (N.D. Cal. Mar. 5, 2010).  Given the prejudice to

12   Plaintiff if default judgment is not granted, and the merits of the allegations contained in the

13   complaint, granting default judgment in this case would not violate the general policy under the

14   Federal Rules of Civil Procedure favoring decisions on the merits.  <u>See</u> <u>PepsiCo Inc.</u>, 238 F.

15   Supp. 2d at 1177.  Accordingly, the Court finds the policy favoring decisions on the merit does

16   not weigh against entering default judgment against Defendant under these circumstances.

17          In sum, the Court finds that the <u>Eitel</u> factors weigh in favor of granting default judgment

18   and will recommend that Plaintiff's motion for default judgment be granted.  The Court now turns

19   to the types of relief requested by Plaintiff.

20          **C.   Requested Relief**

21          In addition to injunctive relief, Plaintiff seeks statutory damages in the amount of

22   $4,000.00, attorneys' fees and paralegals' fees in the amount of $1,624.50, and costs of $765.75,

23   for a total award of $6,390.25.  (ECF No. 8-1, p. 9.)  While the Court will recommend granting

24   Plaintiff's injunction in full, the award of attorneys' fees should be reduced for the reasons

25   discussed below.

26          1.   <u>Injunctive Relief</u>

27          Plaintiff seeks an injunction compelling Defendant to comply with the ADA by removing

28   the itemized barriers that Plaintiff personally encountered.  (ECF No. 1, p. 8; ECF No. 8-1, 11.)

The ADA provides that "injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required" by the ADA.  42 U.S.C. § 12188(a)(2).  A court may grant injunctive relief for violations of the Unruh Act under § 52.1(h).  Vogel, 992 F. Supp. 2d at 1015; Cal. Civ. Code § 52.1.  "Injunctive relief may be granted 'when architectural barriers at defendant's establishment violate the ADA.'"  Johnson v. Pizano, No. 2:17-cv-1655 TLN DB, 2019 WL 2499188, at *6 (E.D. Cal. June 17, 2019) (quoting Vogel, 992 F.Supp.2d at 1015).

Pursuant to federal and California law, Plaintiff is entitled to the removal of those architectural barriers which he encountered on his visit to the Facility that violated the ADA. Therefore, an injunction should issue requiring Defendant to remove barriers that are in violation of the ADA and the ADAAG.

### 2.  Statutory Damages

Plaintiff seeks statutory damages in the amount of $4,000.00 as authorized by the California Unruh Civil Rights Act.  The Unruh Act provides for minimum statutory damages of $4,000.00 for each violation.  Cal. Civ. Code § 52(a).  Under the Unruh Act, statutory damages may be recovered if a violation of one or more construction-related accessibility standards denied the plaintiff full and equal access to the place of public accommodation on a particular occasion. Cal. Civ. Code § 55.56(a).  A plaintiff is denied full and equal access only when they personally encountered the violation on a specific occasion.  Cal. Civ. Code § 55.56(b).  A litigant need not prove any actual damages to recover statutory damages of $4,000.00.  Molski, 481 F.3d at 731.

Because Plaintiff sufficiently alleged violation of the ADA which established a violation of the Unruh Act, the Court finds that Plaintiff is entitled to statutory damages in the amount of $4,000.00.

### 3.  Attorneys' Fees and Costs

Plaintiff seeks attorneys' fees and paralegals' fees in the amount of $1,624.50, and costs of $765.75, for a total award $2,390.25 in fees and costs.  (ECF No. 8-1, p. 9.)  Pursuant to 42 U.S.C. § 12205, the party that prevails on a claim brought under the ADA may recover "a reasonable attorney's fee, including litigation expenses," at the discretion of the Court.  "[U]nder

1   federal fee shifting statutes the lodestar approach is the guiding light in determining a reasonable

2   fee." Antoninetti v. Chipotle Mexican Grill, Inc., 643 F.3d 1165, 1176 (9th Cir. 2010) (cleaned

3   up). The Ninth Circuit has explained the lodestar approach as follows:

> The lodestar/multiplier approach has two parts. First a court determines the lodestar amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. The party seeking an award of fees must submit evidence supporting the hours worked and the rates claimed. A district court should exclude from the lodestar amount hours that are not reasonably expended because they are excessive, redundant, or otherwise unnecessary. Second, a court may adjust the lodestar upward or downward using a multiplier based on factors not subsumed in the initial calculation of the lodestar. The lodestar amount is presumptively the reasonable fee amount, and thus a multiplier may be used to adjust the lodestar amount upward or downward only in rare and exceptional cases, supported by both specific evidence on the record and detailed findings by the lower courts that the lodestar amount is unreasonably low or unreasonably high.

13   Van Gerwin v. Guarantee Mut. Life Co., 214 F.3d 1041,1045 (9th Cir. 2000) (cleaned up).

14       Under the lodestar method, a district court will first determine the appropriate hourly rate

15   for the work performed, and that amount is then multiplied by the number of hours properly

16   expended in performing the work. Antoninetti, 643 F.3d at 1176. The Court has the discretion to

17   make adjustments to the number of hours claimed or to the lodestar but is required to provide a

18   clear but concise reason for the fee award. Gates v. Deukmejian, 987 F.2d 1392, 1398 (9th Cir.

19   1992). The lodestar amount is to be determined based upon the prevailing market rate in the

20   relevant community. Blum v. Stenson, 465 U.S. 886, 896 (1984).

21       **a. Reasonable hourly rate**

22       Counsel Tanya Moore ("Moore") has been in practice for over twenty years, with over ten

23   years spent almost exclusively in disability access litigation, and her current billing rate is

24   $650.00. (ECF No. 8-2, ¶¶ 4, 8.) However, Moore is only seeking an hourly rate of $300.00 for

25   her work on this matter. (Id. at ¶ 8.) Moore is also seeking an hourly rate of $115.00 for the work

26   of Senior Paralegal Whitney Law ("Law"), despite normally billing at a higher rate in the

27   Northern District of California, where the firm is located. (Id. at ¶ 9.)

28       The lodestar amount is to be determined based upon the prevailing market rate in the

relevant community, which in this matter is the Fresno Division of the Eastern District of California.  "To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  Blum, 465 U.S. at 895 n.11.

This Court has previously found $300.00 per hour to be a reasonable rate for Moore.  See, e.g., Gilbert v. HBA Enterprises, Inc., No. 1:21-cv-01358-JLT-SAB, 2022 WL 2663761, at *17 (E.D. Cal. July 11, 2022).  Further, in the context of cases alleging violations of the ADA, courts in this district have awarded fees ranging from $250.00 to $325.00 per hour within recent years.  See, e.g., Cervantes v. Vargas, No. 1:17-cv-00923-LJO-SKO, 2018 WL 2455615, at *7 (E.D. Cal. June 1, 2018) (awarding $275.00 per hour to attorney with nine years of experience and representation in 275 ADA actions); Block v. Christian, No. 1:16-cv-00650LJO-SKO, 2017 WL 5248402, at *4 (E.D. Cal. Nov. 13, 2017) (finding $325.00 per hour to be a reasonable hourly rate for an attorney with twenty-four years of experience in general litigation and twelve years working on ADA cases).  Therefore, the Court will recommend that Plaintiff receive the requested $300.00 per hour for the services of Moore.

The Court also recommends that Plaintiff receive the requested $115.00 per hour for the services of the Law.  The Court has previously found this rate to be reasonable.  See, e.g., Gilbert, 2022 WL 2663761, at *17; see also Durham v. FCA US LLC, No. 2:17-cv-00596-JLT, 2020 WL 243115, at *9 (E.D. Cal. Jan. 16, 2020) ("Generally, paralegal rates within the Fresno Division of the Eastern District range between $75 to approximately $150.00.").

**b.  Reasonable number of hours**

Moore billed 3 hours in this action.  (ECF No. 8-2, ¶ 10.)  Law billed a total of 6.3 hours.  (Id. at ¶ 11.)  The Court has previously observed that "[b]ased upon the Court's familiarity with the actions filed by Ms. Moore's firm in this court, the Court is aware that [Moore uses a] form complaint [that] is substantially similar to dozens of other actions filed in this district," and previously found "time billed [to be] excessive and duplicative."  Lakhani, 2017 WL 1831942, at *7.  However, the Court notes that in this case it appears counsel has taken the Court's previous

orders into consideration, and the Court finds many of the billable hours are within reasonable ranges.

Turning to the specific time entries, on July 15, 2024, Law spent 0.3 hours reviewing the case initiation documents, put notes in a file, and "preparation of JSR," which the Court construes as a joint scheduling report.  (ECF No. 8-3, p. 2.)  On September 10, 2024, Law expended 0.5 hours reviewing the Clerk of the Court's one-page entry of default and then sent a copy of it to Defendant.  (ECF No. 8-3, p. 3.)  The Court finds these entries to be generally clerical work and recommends reducing them to 0 hours.  See Missouri v. Jenkins by Agyei, 491 U.S. 274, 288 n.10 (1989) ("[P]urely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them."); see also Block v. Narwal, No. 1:22-cv-00597-ADA-EPG, 2022 WL 17455502, at *11 (E.D. Cal. Dec. 6, 2022) (awarding no fee for paralegal's boilerplate entry that he spent ".3 hours 'Review[ing] order setting scheduling conference to calendar hearing date, set deadline to complete Rule 26 call, and deadline to file joint scheduling report'" due to its clerical nature).

The Court finds that a reduction of 0.8 hours is appropriate for Law.  The Court finds the remaining hours for Law and Moore are reasonable.  The Court shall add 0.1 hours for the time Moore expended attending the hearing via videoconference, which lasted less than five minutes.

### c.  Total Reasonable Attorneys' Fee Award

The Court finds that counsel Tanya Moore reasonably expended 3.1 hours in this action at a reasonable rate of $300.00 per hour, for a total of $930.00, and senior paralegal Whitney Law reasonably expended 5.5 hours at a reasonable rate of $115.00 per hour, for a total of $632.50. Therefore, the Court will recommend that Plaintiff be awarded attorneys' fees in the amount of $1562.50.

### d.  Costs

The ADA authorizes the award of costs for an action.  42 U.S.C. § 12205; see 28 U.S.C. § 1920.  Plaintiff seeks costs of $405.00 for filing fees; $144.13 for service expense; and $216.62 for a consultant that completed investigation prior to filing of the complaint.  (ECF No. 8-2, ¶¶ 12-14; ECF No. 8-3, pp 5-9.)  The Court finds such costs have been reasonably expended in

1  association with this litigation.

2  **V.**

3  **CONCLUSION AND RECOMMENDATIONS**

4      The <u>Eitel</u> factors weigh in favor of granting default judgment, and the entry of default

5  judgment is within the discretion of the Court.  <u>See</u> <u>Aldabe v. Aldabe</u>, 616 F.2d 1089, 1092 (9th

6  Cir. 1980).

7      Based upon the foregoing, the Court HEREBY RECOMMENDS that:

8      1.      Plaintiff's motion for default judgment (ECF No. 8) be GRANTED;

9      2.      Plaintiff be AWARDED statutory damages in the amount of $4,000.00;

10     3.      Plaintiff be AWARDED reduced attorneys' fees in the amount of $1562.50;

11     4.      Plaintiff be AWARDED costs in the amount of $765.75; and

12     5.      Plaintiff be GRANTED an injunction requiring Defendant, within six (6) months

13             of entry of the order, to provide disability access by making the following

14             modifications to the property known as 1 Stop Liquor, located at 408 East

15             Cleveland Avenue, Madera, California 93638 (the "Facility"), such that each item

16             is brought into compliance with the accessibility requirements of the Americans

17             with Disabilities Act and California Code of Regulations, Title 24, by:

18                     i.  Providing a properly configured and identified accessible parking stall

19                         with adjacent access aisle;

20                     ii. Properly securing or attaching the floor mat at the Facility entrance;

21                         and

22                     iii. Providing and maintaining accessible routes of travel down

23                         merchandise aisles in the Facility.

24     These findings and recommendations are submitted to the district judge assigned to this

25  action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within fourteen

26  (14) days of service of this recommendation, any party may file written objections to these

27  findings and recommendations with the Court and serve a copy on all parties.  Such a document

28  should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The

22

district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS FURTHER ORDERED that the Clerk of the Court is DIRECTED to randomly assign this matter to a District Judge.

Finally, Plaintiff is HEREBY ORDERED to serve a copy of these findings and recommendations on Defendant within three (3) days of entry.

IT IS SO ORDERED.

Dated:   **November 21, 2024**

STANLEY A. BOONE
United States Magistrate Judge